**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| **PATRICIA A. MOORE,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No.** |
| | : | **7:07-CV-193 (HL)** |
| **WAL-MART STORES EAST, L.P.** | : | |
| | : | |
| **Defendant.** | : | |
| **_____** | : | |

## ORDER

Before the Court is Defendant Wal-Mart Stores East, L.P.'s ("Wal-Mart")

Motion for Summary Judgment (Doc. 27).  For the following reasons, Wal-Mart's

Motion is granted.

## I.  FACTS AND PROCEDURAL HISTORY[1]

Plaintiff Patricia A. Moore ("Moore") was hired by Wal-Mart on September 20,

2002, to work as a full-time overnight maintenance associate in its store #952 in

Moultrie, Georgia.  (SOMF ¶ 1; Moore Dep. Ex. 4).[2]  Wal-Mart scheduled Moore to

work from 10:00 p.m. to 7:00 a.m. each day.  (Moore Dep. at 27).  As is described

further below, the parties dispute the date Moore's employment with Wal-Mart

---

[1] The Court views the facts in the light most favorable to Moore as the
nonmoving party.

[2] SOMF refers to Defendant Wal-Mart's Statement of Material Facts (Doc.
32).  The cited paragraphs are those admitted by Moore in her response to the
statement of facts.

ended.

Wal-Mart's night maintenance job description policy defines the essential functions of the position.  According to the policy, the associate is required to

> (1) constantly sweep, vacuum, mop, strip, wax, and buff floors throughout the store; (2) continuously operate floor maintenance machinery equipment; (3) continuously pick up, lift, carry, and place items weighing up to 50 pounds while moving various location; and (4) frequently pick up, lift, carry, and place items weighing greater than 50 pounds while moving to various locations.

(Moore Dep. Ex. 4).

Moore signed the job description policy on September 20, 2002.  (Moore Dep. at 30; Moore Dep. Ex. 4).  By signing the job description policy Moore acknowledged that she had the ability to perform the essential functions of the position with or without a reasonable accommodation.  (Moore Dep. at 30; Moore Dep. Ex. 4).  Moore maintains that while working at Wal-Mart she was never required to buff floors or do any heavy lifting.  (Moore Dep. at 31).  She admitted, however, that she mopped floors and cleaned carpets.  (Moore Dep. at 31, 54).

During her employment at Wal-Mart, one of Moore's supervisors was Kenneth Wilhite ("Wilhite"), co-manager of the store (SOMF ¶ 16; Moore Dep. at 7).  Lisa Merritt ("Merritt") was the store's personnel manager.  (Merritt Aff. ¶ 1).

According to Merritt, Wal-Mart utilizes a computer-based learning system to train new employees on Wal-Mart policies.  (Merritt Aff. ¶ 2).  Merritt believes that every employee is required to complete various training courses on its computer-

based learning system. (Merritt Aff. ¶ 2).   Associates then receive a score at the completion of each course.  The courses work by presenting associates with factual scenarios that raise issues relevant to the particular store policy.  Associates are asked to complete courses on Wal-Mart's Americans with Disabilities Act ("ADA") and Leave of Absence policies.  (Merritt Aff. ¶ 3).  Moore denies she completed any courses on Wal-Mart's Leave of Absence and ADA policies.  (Pl. Response to Wal-Mart's SOMF ¶ 6).  She also claims she did not receive information on any other Wal-Mart policies, although she admits she received a Wal-Mart employee handbook after having signed an employee handbook acknowledgment form.  (P's Response to Wal-Mart's SOMF ¶ 2; Moore Dep. at 32-33).  Wal-Mart's "Completed Training Report for Patricia Moore" shows that Moore completed computer-based courses on Wal-Mart's ADA policy as well as other policies, like Wal-Mart's customer safety and customer service policies.  (Moore Dep. Ex. 5).

Under its Leave of Absence Policy, Wal-Mart will grant a medical leave of absence to an associate who is unable to perform his regular duties.  The leave of absence is granted so that the associate may take time off from work to receive necessary medical treatment.  (SOMF ¶ 8; Moore Dep. Ex. 17).  The length of time that an associate may be on medical leave is determined by the attending physician's statement contained within the Request for Leave of Absence form, but the length of time may not exceed one year unless the associate is on a worker's compensation-related medical leave and state law requires leave to be extended.

3

(Merritt Aff. ¶ 5; Moore Dep. Ex. 17).  To obtain a medical leave of absence, an associate must complete a Request for Leave of Absence form.  The form requires that the associate's health care provider certify the date leave should commence, the nature of the associate's medical condition, the associate's anticipated return to work date, and if applicable, the duration and description of an intermittent leave or reduced hours work schedule.  (Moore Dep. Ex. 17).

A related policy is Wal-Mart's Restriction Due to Medical Conditions policy. This policy provides that Wal-Mart will offer a leave of absence to an associate who has a medical condition that is not a disability under the ADA or state law, and who can no longer perform his job.  (Merritt Aff. ¶ 7; Merritt Aff. Ex. B).

Wal-Mart also has an ADA policy.  It provides definitions of ADA terms and provides guidelines for processing reasonable accommodation requests.  Included is a provision stating that it is Wal-Mart's policy to fully comply with all relevant and applicable provisions of the ADA.  (Def. Memorandum in Support of its Motion for Summary Judgment Ex. 1).[3]

On August 1, 2003, Moore was involved in a non-work related automobile accident where she sustained injuries to her neck and back.  (SOMF ¶ 14; Moore

---

[3]  Wal-Mart's ADA policy is not an exhibit that has been properly made a part of a deposition or affidavit.  It is inadmissible material, but the Court considers it because Plaintiffs have not objected to its admission.  See Davis v. Howard, 561 F.2d 565, 569-570 (5th Cir. 1977) (explaining that where material is inadmissible and yet unchallenged, the court can consider the material on summary judgment).

Dep. Ex. 7).  Moore received medical treatment at Colquitt Regional Medical Center immediately following the accident.  (Moore Dep. at 39; Moore Dep. Ex. 7).  Moore also received treatment for neck and back pain at Regional Therapy Services, Inc. (Moore Dep. at 40; Moore Dep. Ex. 8).

Despite receiving medical treatment, Moore continued to experience neck and back pain.  (Moore Dep. at 42).  On November 10, 20003, Moore's personal family physician, Dr. Nancy Lafuente, wrote a note to Wal-Mart which said that Moore "has been experiencing low back pain due to a recent automobile accident," and "[Moore] states that is able to work only six hours a night."  The note requested that Wal-Mart allow Moore to work six hours a night.  (Moore Dep. at 42; Moore Dep. Ex. 9). Moore submitted the note to Wilhite and requested that her work schedule be adjusted.  (Moore Dep. at 43).  He approved Moore's request based on Dr. Lafuente's note and allowed Moore to work six hours per night instead of eight. (SOMF ¶ 16; Wilhite Aff. ¶ 2; Wilhite Dep. at 9).

After two months of working on the adjusted working schedule, Moore requested a medical leave of absence.  (Moore Dep. Ex. 13).  Her Request for Leave of Absence form stated that her return to work date was undetermined. (Moore Dep. at 57; Moore Dep. Ex. 13).  The form also included a certification from Dr. Lafuente, who wrote that Moore required continuous medical leave due to her chronic low back pain.  (Moore Dep. at 56; Moore Dep. Ex. 13).  On January 9, 2004, Wal-Mart approved Moore's request for medical leave.  (Moore Dep. at 56, 57;

5

Moore Dep. Ex. 13).

Approximately six and a half months later, on July 23, 2004, Dr. Lafuente wrote another note which said that Moore could return to work at Wal-Mart beginning August 2, 2004.  (Moore Dep. at 51; Moore Dep. Ex. 12).  The note also included specific restrictions on Moore's work activities.  The restrictions limited Moore to working five hours a day, standing twenty minutes per hour, walking two hours daily, lifting a maximum of twenty pounds, and sitting for thirty minute intervals for a total of two hours daily.  (Moore Dep. at 53; Moore Dep. Ex. 12).

Although Dr. Lafuente's note released Moore to work beginning on August 2, 2004, it is undisputed that Moore did not work for Wal-Mart on August 2, 2004, or at anytime afterward.  The reason why Moore did not return to work, however, is disputed by the parties.  Moore contends that on August 2, 2004, she went to Wal-Mart and gave one of her supervisors Dr. Lafuente's note releasing Moore to work. Moore could not remember the supervisor's name, but she claims that the supervisor told her that light duty work was not available during Moore's nighttime shift.  (Moore Dep. at 52).   Moore stated that she told the supervisor that she did not require light duty work and could "hang Soft-Lines or put up returns" or perform the same night maintenance duties she had before going on a leave of absence.  (Moore Dep. at 52, 54, 55).   In response, the supervisor asked Merritt to speak to Wilhite about whether any duties were available for Moore during the day shift.  (Moore Dep. at 52).  According to Moore, Wilhite responded that there were no jobs available for

6

Moore, and that "they didn't have anything for [her] to do." (Moore Dep. at 52). Believing she had been terminated, Moore stated she applied for unemployment benefits. (Moore Dep. at 52; Wilhite Dep. Ex. 2; Moore Dep. Ex. 21).

In contrast, Wal-Mart's position is that Moore decided to voluntarily remain on a leave of absence from August 2, 2004, onward.  According to Wilhite, on August 2, 2004, he placed Moore on Wal-Mart's work schedule and provided accommodations to Moore by "giving her restrictions on her light duty." (Wilhite Dep. at 18).  Wilhite alleges that Moore failed to appear at her scheduled work time. (Wilhite Dep. at 18; Wilhite Dep. Ex. 1).  Nevertheless, Wilhite stated that Wal-Mart did not fire Moore when she failed to appear for work; instead he believed Moore had resumed her leave of absence.  (Wilhite Dep. at 18).

The Georgia Department of Labor awarded Moore unemployment benefits. Wal-Mart appealed the decision.  (Moore Dep. Ex. 21).  On appeal, the Department of Labor affirmed the award because it concluded that Moore was on an involuntary leave of absence and thus entitled to benefits.  It found that Wal-Mart did not terminate Moore, but ordered she remain on a leave of absence.  According to the Department of Labor, Moore was ready and able to work on August 2, 2004, but Wal-Mart erroneously believed that her doctor had not released her to work.  (Moore Dep. Ex. 21).

In addition to receiving unemployment benefits, Moore received long term disability benefits from Wal-Mart's insurance carrier from March 12, 2004 through

January 31, 2006.  (Moore Dep. Exs. 22, 23).  The insurance carrier decided to discontinue coverage at the end of January, 2006  because it determined that Moore was no longer totally disabled.  (Moore Dep. Ex. 23).  Consequently, Moore claims she reported to Wal-Mart for work on January 31, 2006, but "Wal-Mart indicated to [her] that [she] must be 100% capacity to work at Wal-Mart."  According to Moore, Wilhite told her that "there was nothing he could do for her." (Moore Aff. ¶ 5).  Moore believes Wal-Mart terminated her on January 31, 2006.  (Moore Aff. ¶ 5).

Wal-Mart, however, alleges it terminated Moore's employment on February 17, 2005, when she failed to return from her leave of absence.  In a letter dated February 1, 2005, Wal-Mart wrote Moore and explained that her maximum one year leave of absence had expired.  (Merritt Aff. ¶ 8; Moore Dep. Ex. 15).  The letter stated that Moore needed to contact Wal-Mart within three business days or else Wal-Mart would be "forced to terminate [her] employment." (Merritt Aff. ¶ 8; Moore Dep. Ex. 21).  Moore admits she received this letter.  (Moore Dep. at 61).  According to Merritt, Moore failed to contact Wal-Mart within three business days; therefore, Wal-Mart contends it terminated her employment on February 17, 2005.  (Merritt Aff. ¶¶ 9, 10).  In her deposition, Moore claims she responded to Wal-Mart's letter.  She states that she spoke to Wilhite about returning to work, but he again said that she had to be "one hundred percent" before she could work.  (Moore Dep. at 63).

Moore's signature appears at the bottom of a Wal-Mart exit interview dated March 25, 2004, which lists "Failure to Return from LOA" as the reason for her

8

termination.  (Moore Dep. Ex. 18).  The interview contains the signatures of Gloria Barnwell, a salaried member of management and an unidentified other member of management.  (Moore Dep. Ex. 18).   The date March 25, 2004, written as 3/25/04, appears next to each of the managers' signatures.  Marked also on the form was termination "Due to Health," but this reason was crossed out.  (Moore Dep Ex. 18). Wal-Mart alleges the exit interview contains a typographical error and the correct termination date should be February 17, 2005, not February 17, 2004, as it believes is indicated on the exit interview.  (Merritt Aff. ¶ 11).  Contrary to Wal-Mart's belief, the exit interview does not contain the date February 17, 2004, but is dated March 25, 2004.  (Moore Dep. Ex. 18).  Wal-Mart also alleges that checking the termination "Due to Health" on the form was a mistake and that is why it is crossed out. (Def. Reply Memo at 5).  Moore does not remember receiving the exit interview.  (Moore Dep. at 70).

In July, 2006, the Social Security Administration awarded Moore Social Security benefits because it found she was disabled within the meaning of the Social Security Act.  (Pl. Ex. re Motion for Summary Judgment).[4]  It concluded there were no jobs in the national economy that Moore could perform because she is unable to

_____

[4] The Social Security Administration decision is not attached as an exhibit to an affidavit or deposition.  It is inadmissible material.  The Court considers it, however, because Defendants did not object to its admissibility.  See Davis v. Howard, 561 F.2d 565, 569-570 (5th Cir. 1977) (explaining that where material is inadmissible and yet unchallenged, the court can consider the material on summary judgment).

sustain an eight hour work day on a regular and continuing basis.  (Pl. Ex. re Motion for Summary Judgment).

On July 6, 2006, Moore filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  (Moore Dep. Ex. 25).   On December 15, 2006, the EEOC issued Moore a right to sue letter after being "unable to conclude that the information obtained establishes violations of the statutes." (Moore Dep. Ex. 27).

On March 15, 2007, Moore filed a complaint against Wal-Mart alleging that it discriminated against her on the basis of her disability when it terminated her employment in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, *et. seq*.  On November 14, 2008, Wal-Mart filed this Motion for Summary Judgment.  Wal-Mart argues it is entitled to judgment as a matter of law as to all issues raised by Moore's complaint.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment must be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In ruling on a defendant's motion for summary judgment, the court takes the facts in the light most favorable to the plaintiff.  Stanley v. City of

Dalton, 219 F.3d 1280, 1287 (11th Cir. 2000).  The court may not, however, make

credibility determinations or weigh the evidence.  Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

     The initial burden lies on the movant to demonstrate that the nonmovant lacks

evidence to support an essential element of its claim.  Lowe v. Aldridge, 958 F.2d

1565, 1569 (11th Cir. 1992).  The burden then shifts to the nonmovant, who must

come forward with some evidence that would allow a jury to find in his favor, even

if the parties dispute that evidence.  Id.  If the evidence that the nonmovant presents,

however, is "not significantly probative" or "merely colorable," then summary

judgment may be granted.  Liberty Lobby, 477 U.S. at  249.

## B. Conclusions of Law

### 1. Timely Filing of EEOC Charge

     Wal-Mart has first moved for summary judgment on Moore's ADA claim on the

ground that Moore failed to timely exhaust her available administrative remedies.

Plaintiffs suing under the ADA "must comply with the same procedural requirements

to sue as exist under Title VII of the Civil Rights Act of 1964."  Zillyette v. Capital

One Fin. Corp., 179 F.3d 1337, 1339 (11th Cir. 1999).   These procedural

requirements are: (1) bringing suit within 90 days after the EEOC has dismissed the

charge of discrimination.  Id.;  42 U.S.C. § 2000e-5(f)(1); and (2) filing a timely

charge of discrimination with the EEOC.  Maynard v. Pneumatic Prod. Corp., 256

F.3d 1259, 1262 (11th Cir. 2001).   In a non-deferral state, such as Georgia,  a

11

charge of discrimination with the EEOC is timely if it is filed within 180 days after the alleged discrimination.  Watson v. Blue Circle, Inc., 324 F.3d 1252, 1258 (11th Cir. 2003); 29 C.F.R § 1601.13(a)(1).  The time period commences to run when the adverse employment decision is made and is communicated to the plaintiff.  Del. State Coll. v. Ricks, 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980).

In this case, Moore brought suit within 90 days after the EEOC dismissed her discrimination charge.  Wal-Mart contends, however, that Moore's July 6, 2006 EEOC charge was filed more than 180 days after the allegedly discriminatory act. Merritt testified in her affidavit that Wal-Mart terminated Moore on February 17, 2005, after she failed to respond to a certified letter from Wal-Mart explaining that Moore's leave of absence was to expire and that Moore needed to respond to the letter within three days or face voluntary termination.  She also testified that Moore received and signed an exit interview that served as notification to Moore that she had been terminated on February 17, 2005.  In her affidavit, Merritt avers that the date on the exit interview contained a typographical error and the correct date should have been February 17, 2005.[5]

---

[5] For the purpose of summary judgment the Court accepts as true the testimony that the exit interview date is a typographical error.  Nevertheless, the Court notes that it finds it implausible that the exit interview contains a typographical error.  The date 03/25/04 is written twice on the interview by two administrators.  Both administrators must have made typographical errors in order for Merritt's testimony to be true.  Moreover, a typographical error usually occurs when the author mistakenly writes the year, month, or date.  The Court does not believe Wal-Mart's argument that the authors were mistaken as to the

Because this is a summary judgment order, the Court assumes that Wal-Mart's evidence is true; therefore, if the facts presented by Wal-Mart were the only facts in the record, Moore's EEOC charge would be untimely. In this case, however, Moore's testimony and affidavit, which the Court must accept as true, show that she was not terminated until January 31, 2006. If Wal-Mart terminated her on July 31, 2006, then her discrimination charge was timely. Moore testified that she returned to Wal-Mart to work on January 31, 2006, the date her long term disability benefits expired, and upon arriving at Wal-Mart Wilhite told her that "there was nothing he could do for her," and that "Wal-Mart indicated to [her] that [she] must be 100% capacity to work." Moore also testified that she responded to Wal-Mart's certified letter requiring her to contact the store within three days of her receipt of the letter. According to Moore, Wilhite told her that she had to be "one hundred percent" before she could work.

Thus, it is clear that Moore's testimony raises a genuine issue of material fact as to whether she received unequivocal notice of her termination more than 180 days prior to her filing a charge of discrimination with the EEOC. Wal-Mart is not entitled to summary judgment on the basis that Moore failed to file a timely EEOC charge.

---

correct year, month, and date.

### 2. Framework for Analyzing an ADA Claim

The ADA prohibits an employer from discriminating against "a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees . . . ." 42 U.S.C. § 12112(a). Plaintiffs bringing an ADA claim may show discrimination through circumstantial evidence. Moore's claim is based entirely on circumstantial evidence because it is evidence that requires the fact-finder to make inferences to conclude Moore was discriminated against by Wal-Mart. See Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999) (explaining that direct evidence of discrimination is evidence "if believed, proves [the] existence of [a] fact in issue without inference or presumption.").

Plaintiffs pursuing ADA claims based on circumstantial evidence are required to prove discrimination under the traditional Title VII burden-shifting framework. Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000). The burden-shifting analysis first requires the plaintiff to establish a prima facie case of discrimination. Id. If successful, then a presumption of discriminatory intent arises and the burden of production shifts to the employer to state a legitimate, non-discriminatory reason for its action. Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1193 (11th Cir. 2004). The burden then shifts back to the plaintiff to show that the defendant's proffered legitimate, non-discriminatory reason is a pretext for discrimination. Id.

### 3. Moore's Prima Facie Case

To establish a prima facie case of discrimination under the ADA, a plaintiff

14

must show: (1) she is disabled; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability.  Earl, 207 F.3d at 1365.

### a. *Whether Moore is Disabled*

The Court must first determine whether Moore has established that she has a disability.  The ADA defines a disability as a "(a) physical or mental impairment that substantially limits one or more major life activities of such individual; (b) having a record of such an impairment; or (c) being regarded as having such an impairment." 42 U.S.C. § 12102(1).  Moore contends that she is disabled under the first and third definitions.  She asserts that she has a physical impairment that substantially limits the major life activity of working.  Alternatively, she contends that Wal-Mart regarded her as having an impairment.

A physical or mental impairment as defined within the ADA means a disorder or condition that affects "one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory, cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin and endocrine." 29 C.F.R. § 1630.2(h)(1).  A person is substantially limited in his ability to perform a major life activity if he is significantly restricted as to the condition, manner, or duration under which he can perform a major life activity as compared to the average person.  29

15

C.F.R. § 1630.2(j)(ii).[6]

The ADA includes working as a major life activity.  42 U.S.C. § 12102(2)(B).

To be substantially limited in the major life activity of working, an individual must be

"significantly restricted in the ability to perform either a class of jobs or a broad range

of jobs in various classes as compared to the average person having comparable

training, skills, and abilities." Rossbach v. City of Miami, 371 F.3d 1354, 1359 (11th

Cir. 2004).  In other words, "if jobs utilizing an individual's skills are available, that

individual is not considered substantially limited in her ability to work." Cash v.

Smith, 231 F.3d 1301, 1306 (11th Cir. 2000).

The parties do not contest whether Moore has a physical impairment.  She

suffers from neck and back pain that affects her ability to work eight hours, lift, walk,

stand, and sit.  Evidence of impairment, however, without additional evidence

showing that the plaintiff is substantially limited in her ability to work is insufficient

to meet the ADA's definition of disabled.  Toyota Motor Mfg., Ky., Inc. v. Williams,

534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), *superseded by statute*

---

[6] Congressional amendments to the ADA went into effect on January 1, 2009.  See ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 3553 (2008).  Pursuant to these amendments, Congress expects the EEOC to broaden its definition of "substantially limits."  See 42 U.S.C. § 12102(4)(B) (stating that "[t]he term "substantially limits" shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008.").  The EEOC has not yet redefined "substantially limits."  Nevertheless, the Court finds that Moore's ability to work  is "substantially limited" within the meaning of the current EEOC definition.

*on other grounds*, ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3353 (2008).

Wal-Mart has presented evidence showing that Moore's impairment moderately limits her from working and does not substantially limit Moore from working in a broad range of jobs.  Moore admitted that she could not do "a whole lot of bending and stooping and stuff like that and lifting things heavy."  (Moore Dep. at 72).  She also agreed that she did not consider herself disabled.  (Moore Dep. at 70).

In contrast, Moore has presented evidence that she is precluded from working in a broad class of jobs.  First, Moore testified that she was "not able to perform the job duties and different stuff that I was normally doing." (Moore Dep. at 71).  Second, the severity of her work limitations is documented in the medical notes found in the record.  In November, 2003, Dr. Lafuente limited Moore to working six hours a night.  In August, 2004, Dr. Lafuente further restricted Moore's working conditions by limiting Moore to working five hours a day, standing twenty minutes per hour, walking two hours daily, lifting a maximum of twenty pounds, and sitting for thirty minute intervals for a total of two hours daily.  The note did not set forth a date for when the restrictions would be lifted.  Under these work conditions, Moore was indefinitely unable to perform a class of jobs requiring her to work full time or to perform constant manual labor.

Third, the Social Security Administration found that Moore was disabled within the meaning of the Social Security Act.  It concluded that Moore was disabled

because she was precluded from working the class of jobs in the economy that require a worker to sustain an eight hour workday on a continuing and regular basis.

Viewed in the light most favorable to Moore, the Court concludes that the medical restrictions, administrative findings, and Moore's testimony create a genuine issue of material fact as to whether Moore's impairment precludes her from performing a class of jobs.  The Court recognizes that a finding of disability by the Social Security Administration is not dispositive for claims arising under the ADA. *Couts v. Beaulieu Group, L.L.C.*, 288 F. Supp. 2d 1292, 1304 (N.D. Ga. 2003).  Nevertheless, Moore has presented sufficient other evidence showing she is substantially limited in the activity of working.  Her testimony and the medical notes show she cannot work eight hours each day or perform constant manual labor; thus, the Court finds that Moore has created a genuine issue of material fact as to whether she is disabled.

Having determined Moore is disabled under the first definition of disability, the Court declines to decide whether Wal-Mart regarded her as disabled.

### b. *Whether Moore is a Qualified Individual*

The Court continues to the second prong of the prima facie ADA case by determining whether Moore is a qualified individual with a disability.  The ADA defines qualified individual as a person with "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).  In its Motion for Summary

Judgment, Wal-Mart does not dispute that Moore is a qualified individual.[7] Consequently, the Court concludes that Moore has shown there is a genuine issue of material fact as to whether she can perform the essential functions of her job with or without an accommodation; therefore, Wal-Mart is not entitled to summary judgment as to the second prong of Moore's prima facie case.

### c. *Whether Wal-Mart Discriminated Against Moore*

Having reached the third step in the prima facie discrimination analysis, Moore must show that Wal-Mart discriminated against her because of her disability.  It is unlawful discrimination for an employer to fail to provide a reasonable accommodation for a qualified disabled individual.  42 U.S.C. § 12112(b)(5)(A); D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220, 1225-26 (11th Cir. 2005).

Moore asserts that Wal-Mart failed to reasonably accommodate her when it refused to allow her to return to work on January 31, 2006.  In turn, Wal-Mart first

---

[7] If Wal-Mart contested this prong of the prima facie case, then the Court might have found Moore unable to prove her prima facie case.  At this summary judgment stage, Moore has shown she is disabled in part because she cannot sustain an eight hour workday on a continuous basis.  In the case of a full-time job, an essential function can include the ability to work full-time.  DeVito v. Chi. Park Dist., 270 F.3d 532, 534 (7th Cir. 2001); Browning v. Liberty Mut. Ins. Co., 178 F.3d 1043, 1048 (8th Cir. 1999).  Logically then, allowing an employee to work a full-time job for less than full-time cannot constitute a reasonable accommodation.  Devito, 270 F.3d at 534.  Wal-Mart has not argued that working eight hours a day is an essential function of its full-time night maintenance position.  If it had done so and presented evidence, then Moore's inability to work full-time might have precluded the Court from finding as a matter of law that she is a qualified individual.

argues that Moore has not met her burden of showing that she was terminated because of her disability.  Second, it argues Moore failed to identify how she was treated differently from non-disabled workers.  The Court concludes that Wal-Mart's second argument is without legal merit.  Under the ADA, a plaintiff need not prove disparate treatment.  She must only show that her employer failed to reasonably accommodate her, and but for the employer's failure to accommodate, she would not have been terminated.  Holly v. Clairson Indus. L.L.C., 492 F.3d 1247 (11th Cir. 2007).[8]

Thus, to satisfy the third step of the prima facie case analysis, Moore must only show that Wal-Mart terminated her because it did not wish to reasonably accommodate her disability.  Possible reasonable accommodations under the ADA include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, . . . and other similar accommodations."  42 U.S.C. § 12111(9)(B).  Although part-time work can be a reasonable accommodation, an employer is not required to create a part-time position for the disabled employee when before only full-time positions had been available. Terrell v. USAir, 132 F.3d 621, 626 (11th Cir. 1998).   An employer may

---

[8] In support of its disparate treatment argument, Wal-Mart refers to a district court's summary judgment order in the case Holly v. Clairson Indus., L.L.C., 18 A.D. Cases 286 (M.D. Fla. 2006).  Wal-Mart failed to notice, however, that the Eleventh Circuit reversed the district court  finding it had improperly analyzed the unlawful discrimination prong of an ADA plaintiff's prima facie case.  Wal-Mart's reliance on the case is therefore improper.

also reasonably accommodate a person by reassigning them to light duty work, but the ADA does not require the "employer to bump another employee from a position in order to accommodate a disabled employee." Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1256 (11th Cir. 2001).

Moore has shown facts that Wal-Mart could reasonably accommodate her disability by reducing her work hours and altering the nature of her work responsibilities.  After her accident in August, 2003, Wal-Mart accommodated her by allowing her to work for two months on a reduced hours work schedule.  Wilhite also testified that he placed Moore on light duty after she requested to return to work in November 2004.  More importantly, Wal-Mart does not dispute that it was willing and able to reasonably accommodate Moore's work restrictions.  Instead, the crux of Wal-Mart's argument is that Moore cannot prove Wal-Mart terminated her because of her disability.  It argues that Moore's failure to return from her leave of absence was the reason for her termination.  Wal-Mart also points to the fact that no one at Wal-Mart commented to Moore about her alleged disability and Moore never notified anyone at Wal-Mart that she was disabled.

Moore, however, has shown sufficient facts that Wal-Mart failed to accommodate her disability and this failure was the cause of her termination.  In her deposition and affidavit she testified that she sought to return to work on August 2, 2004, when Dr. Lafuente released her to work with restrictions.  In her deposition Moore claims that she responded to Wal-Mart's February, 2005 letter informing her

21

that her leave of absence expired.  Finally, Moore testified that on January 31, 2006,

Moore returned to work when her disability benefits expired.    At each of these

attempts to resume working, Moore testified that Wilhite told her that there was

nothing he could do for her and that she had to be 100% in order to work.    Moore's

testimony is in direct conflict with Wilhite's assertion that Moore received a reduced

hours work schedule and was placed on light duty work.  It also conflicts with

Merritt's testimony and the exit interview that Moore failed to return from her leave

of absence.  These conflicts within the testimony and documentary evidence raise

a question of fact as to whether Wal-Mart reasonably accommodated Moore and

whether Wal-Mart terminated Moore because of her disability.

Moreover, Moore's failure to file a reasonable accommodation request is not

fatal to her prima facie claim, nor is her testimony that no one at Wal-Mart mentioned

her disability to her.  To satisfy the third prong of her prima facie case, "a plaintiff

must demonstrate that the employer had either actual or constructive knowledge of

the disability or considered the employee to be disabled." Gordon v. E.L. Hamm &

Assoc., Inc., 100 F.3d 907, 911 (11th Cir. 1996).  "Vague or conclusory statements

revealing an unspecified incapacity are not sufficient to put an employer on notice

of its obligations under the ADA." Morisky v. Broward County, 80 F.3d 445, 448

(11th Cir. 1996).

The facts show that Wal-Mart personnel knew of Moore's work restrictions

made necessary by her medical impairments caused by her automobile accident.

22

Dr. Lafuente's medical notes and Moore's Request for Leave of Absence form indicate that Moore's back pain was caused by her automobile accident.  It is undisputed that these documents were read and received by Wal-Mart personnel. Moreover, Wal-Mart's ADA policy states that an applicant may request a reasonable accommodation orally or in writing from any Wal-Mart store.  Although Moore did not file a written accommodation request, her and Wilhite's testimony that she asked him for light duty work and a reduced hours schedule shows that she informed Wilhite, and therefore Wal-Mart, of her disability and did not violate Wal-Mart policy; thus, the Court concludes that Wal-Mart had actual knowledge of Moore's disability.

In viewing the facts in the light most favorable to Moore, the Court finds that there is a genuine issue of material fact as to whether Wal-Mart unlawfully discriminated against Moore on the basis of her disability.  Accordingly, Moore has successfully presented a prima facie case of disability discrimination.

### 4. Wal-Mart's Legitimate, Nondiscriminatory Reason

Once a plaintiff establishes a prima facie case of disability discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action.  Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).  Wal-Mart has produced evidence that it terminated Moore because she failed to return from a leave of absence after it notified Moore that her leave of absence was to expire. Generally, an employer may legitimately prevent a person from returning to work

when the person fails to return from a leave of absence.  <u>Birdyshaw v. Dillard's Inc.</u>, 308 Fed. Appx. 431, 439 (11th Cir. Jan. 28, 2009) (unpublished).  The Court finds that Wal-Mart has met its burden, especially since Moore does not address whether Wal-Mart's reason for her termination was legitimate.

### 5. Pretext

After the employer presents a legitimate, nondiscriminatory reason for its action, "the plaintiff must then present concrete evidence in the form of specific facts which show that the defendant's proferred reason is merely pretext."  <u>Earley v. Champion Intern Corp.</u>, 907 F.2d 1077, 1081 (11th Cir. 1990).  The plaintiff can show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proferred explanation is unworthy of credence."  <u>Jackson v. State of Ala. State Tenure Comm'n</u>, 405 F.3d 1276, 1289 (11th Cir. 2005).  A plaintiff may show pretext by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's proferred reason.  <u>Brooks v. County Comm'n of Jefferson County</u>, 446 F.3d 1160, 1163 (11th Cir. 2006).

Wal-Mart contends it fired Moore for her failure to return from her leave of absence.  Moore does not attempt to show pretext in her Response or Memorandum in Opposition to Wal-Mart's Motion for Summary Judgment.  She instead focuses her entire argument on proving her prima facie case of disability discrimination.  Unfortunately for Moore, her failure to argue pretext is fatal to her ADA claim.  <u>See</u>

24

Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376 (11th Cir. 1996) (explaining that under the burden-shifting framework, a plaintiff who fails to produce any evidence rebutting a legitimate reason for termination cannot survive summary judgment).

Moore has established a causal link between her disability and the reason for her termination, and thus has met her burden of establishing a prima facie case of employment discrimination. Stated differently, Moore has presented her own version of the events, which show that Wal-Mart terminated her when she returned to work in January, 2006 because she was not capable of working without medical restrictions. Nonetheless, Moore has not presented evidence showing that Wal-Mart's legitimate explanation for its decision to terminate Moore is unworthy of credence. In other words, Moore has not poked holes into Wal-Mart's explanation in an attempt to show that Wal-Mart's reasons for terminating her are unbelievable or are motivated by discriminatory animus. She points to nothing in the record indicating that testimony from Wal-Mart employees is false or that the documentary evidence is untrue.

Moore's possible attempt to show that Wal-Mart's asserted reason for her termination is pretextual is the statement in her memorandum that "Plaintiff disputes Wal-Mart's assertion that she failed to return from a leave of absence." This statement is insufficient evidence showing pretext; rather it is a conclusory statement unsupported by specific facts. The Court notes that it believes that Moore could

25

have raised arguments and highlighted evidence in the record showing Wal-Mart's explanation is pretextual.  It is not, however, the responsibility of the Court to make her arguments.  There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.  Blue Cross & Blue Shield of Ala. v. Weitz, 913 F.2d 1544, 1550 (11th Cir.1990).  Rather, the parties are responsible for formulating arguments.  Id.

The Court accordingly grants summary judgment in favor of Wal-Mart.


**SO ORDERED,** this the 23rd day of September, 2009.


/s/ Hugh Lawson
**HUGH LAWSON, Senior Judge**


lmc

26